BREAUX, J.
Plaintiffs sue the defendant for a diminution in the price of property which the former bought from the latter.
The plaintiffs, in substance, aver that they bought as per the measurement contained in the act of sale; that they intended to make improvements on the place to cover the whole front; that they had prepared plans for buildings which they designed to put upon the lot; that on their failure to find, by nearly one-third, the measurement mentioned in the deed, they had to give up their project.
The amount of the price is $16,500.
The asserted value of the diminution claimed by plaintiffs is $5,322.58.
Plaintiffs further allege that the property was bought by them by measurement, and not by boundary.
The defendant, in the first place, pleaded the general issue, and, in addition, averred, in substance, that he was owner of the brick building forming the corner of Perdido and Carondelet streets; that there is no interval' between this building and the building adjoining.
That in the act of sale by the defendant, Stauffer, to plaintiffs, Favrot & Livaudais, the measurements of the property were erroneously given as 31 feet front on Perdido street.
Defendant further avers that said plaintiffs are architects and builders by profession, and had examined the property before they offered to buy it; that their purpose was to buy the building and lot as the building stood, with its physical limits, which were apparent, and the exact measure of whose dimensions could be approximated by the eye.
Respondent also averred that the annexed references contained in the title sued on by plaintiffs sufficiently informed them of the true facts as to the measurements, and that the deed should be corrected.
Respondent called his vendor, the Canal Bank, in warranty.
The record discloses that some years ago Mrs. Samuel Jamison owed money to the Canal Bank, and had on the 24th of February, 1896, mortgaged this property to her creditor, the bank. She in course of time transferred this property to the bank by an act of dation en paiement.
The bank, after it had owned, sold it to the defendant, and he sold it to plaintiffs.
In each of the deeds regarding the property, beginning with the deed of mortgage before mentioned, the property is described—
“As a certain lot of ground, together with all the buildings and improvements thereon, situated in the First District of this city, in the square bounded by Carondelet, Perdido, Poydras and Carroll streets, forming the corner of Carondelet and Perdido streets,’ and measuring thirty-one feet front on Per-dido street, by a depth between parallel lines and front on Carondelet street, of one hundred and seventeen feet two inches and six lines.”
In all the acts the property is described as measuring 31 feet on Perdido street.
*161 In January, 1903, one of the members of defendant’s firm began to treat with the Canal Bank respecting the purchase of the property in question, through its vice president, who was acting for the defendant.
As witnesses, these parties do not agree about what was said regarding the number of feet front the lot has. One affirms, ahd the other denies, that there was something-said about measurement. At any rate, after this conversation between them, plaintiffs addressed a note to Mr. Stauffer, the defendant, of which the following is a copy:
“We hereby offer you sixteen thousand five hundred dollars ($16,500) for the certain property situated on Carondelet and Perdido streets, measuring about thirty feet by one hundred feet in the square bounded by Poydras and Baronne streets.”
This offer was accepted by defendant and the sale was afterward passed to plaintiff of property measuring 31 feet front by 117 feet in depth.
The vice president of the bank, with whom the buyer treated in matter of the sale, said, in substance, that if he had had to write an offer of the property correctly, or if he had been called upon for the measurement, he would have consulted the act, which he at the time considered correct.
The notary of the bank, before whom all these deeds were passed, informs us by his testimony that, prior to the act of mortgage executed by Mrs. Jamison to the Canal Bank, the actual frontage of the property was 21 feet, and that, by an oversight in the act of mortgage by Mrs. Jamison to the bank, he gave the property, by description, 10 feet more on Perdido than it actually had; that, in copying the description which he inserted years ago in said mortgage, he thought he had made a mistake, and took a “2” for a “3,” and gave to the property the erroneous front before stated — although the title gave her only 21 feet. The same mistake afterward persistently appeared in the different acts. The erroneous description in the act of mortgage was copied and recopied in subsequent acts.
Some time after the sale here in question, the vendees, Favrot & Livaudais, having ascertained that there was a less number of feet front, by 10, than mentioned in their deed of purchase, called on the bank. In an interview between an officer of the bank and Favrot & Livaudais, the bank offered to rescind.the sale because of the deficiency in measurement, and pay back the price, with legal interest. The plaintiff firm declined to. accept this offer to rescind the sale.
The defendant had judgment in his favor in the court below, and plaintiffs appeal.
We will state at the outset that, in our view, the sale was by measurement, and not by boundary.
There was unquestionably an error committed by defendant. It devolves upon us to determine whether it was of a character to relieve the defendant from the necessity of making good the deficiency.
The error seems to have been confined to the defendant and his authors. This error had slipped itself into several deeds without their knowledge.
Evidently defendant intended to sell the property as a whole, and between him and his author, the Canal Bank, listlessly, as to measurement, passed the act of sale.
When an error arises between the parties, the jurisprudence of this court has gone far in the direction of holding that testimony is admissible of a date prior to, and in explanation of, the real intention of the parties.
The testimony to prove error was properly admitted in the case before us for decision.
Able and learned counsel have invited our attention to a number of decisions of this court sustaining the view that oral testimony *163 may be admitted, and error corrected. With this view we agree. It must appear, however, after this testimony has been admitted, that the error is a common error between the parties.
We have read the decisions cited with most careful attention, and left them convinced that- they referred to correction of the description of the deed when it is not the repository of the intention of the parties, and not when one of the parties was in error.
In the first decision cited by defendant (Levy v. Ward, 33 La. Ann. 1035), the error arose “between the original parties, * * *
the plea is urged by the representatives of the party against whom error is charged, and who is represented by them as having fraudulently caused the error.” There is no question of fraud here, and it is not charged that the plaintiffs were in any way responsible for the error in description.
In the cited case supra there was common error, as shown by the following quotation:
“Ward’s written admissions of the identity of the land, though made after the date of the deed, after he had ceased to own the property, not being charged and proved to have been made in error, were conclusive upon him, and actually bind his legal representatives in the same manner.” Levy v. Ward, Administratrix, 33 La. Ann. 1037.
The written admission just quoted from the case cited supra is sustained, as to its correctness, by the testimony. It follows that in the cited case it was an error in which the vendee had participated, and for which he was to some extent responsible.
The next decision cited by defendant shows that plaintiff had agreed to sell the defendant two tracts of land — one containing 2,840 acres; the other, 2,122 acres. The act, by error, was made to include three tracts of land. In answer to the suit brought by plaintiff for correction, the purchaser denied that there had been a mistake. The court said: “The parol testimony being admitted, there can be no doubt of the real intention of the parties.” Vignie v. Brady and Gharpaux, 35 La. Ann. 561. The intention had never been, by either party, to include the three tracts.
In Palangue v. Guesnon, 15 La. 312, the-court said that, by accident or negligence, the instrument had not been made the actual depository of the intention of the contracting parties. The text shows that the purchaser was well aware of the error at the-time he bought, and that the lot he claimed was not the lot he bought.
Williams v. Vance, 2 La. Ann. 909 — another decision cited — treats of fraud; the vendor-having fraudulently substituted other land than that sold. Parol evidence admitted showed the fraud committed. Here there is. no question of fraud.
In Fleming & Baldwin v. Scott and Ida Watson, 26 La. Ann. 545, the object was to fix the boundaries of the land. Evidence was admitted to prove that the purchasers were well aware of the measurement of the property they were buying. The decisions referred to are cited by defendant.
We will not refer particularly to Wurzburger v. Meric, 20 La. Ann. 415, in which case it was stated that the vendee knew all about the error at the time of the sale, except to say that it confirms our view that an error should be corrected only when both parties concerned are evidently in error. There-must have been common error.
Here we have not found that error was committed by plaintiffs in regard to the-measurement, nor does the evidence show that they intended to accept less than the-number of feet which they mentioned in their written proposal prior to their purchase.
Our researches have failed to find a decision ip which it was held, the vendor alone being in error, and the defendant in good faith, the sale could not be annulled, nor the diminution of the price allowed. If there is* *165 any -well-considered decision sustaining that view, our conclusion should be different.
Can both parties to the deed be considered to have been in error in the case before us for decision? We think not.
The plaintiff and defendant agreed in regard to every essential connected with the sale. There was complete consensus.
It was only after the sale that error was discovered. The error was by the officer whose pen, years ago, in the utmost good faith, wrote “31 feet front,” as he, as a witness, stated, in lieu of the correct front, of 21 —an unfortunate error, as nearly all errors are, but which must nevertheless, under the law, be limited in its effect to the parties concerned, and should not prejudice the rights of third persons.
The further contention of the defendant is substantially that the plaintiff is not to be considered as a third person, as he 'must have known that the front was less than stated in the deed.
Defendant and his vendor (called in warranty) would have us to hold plaintiffs to have known that which they failed to find out from the date of the mortgage, in 1800, on this property, executed by Mrs. Jamison to the bank in error, to the date that it was found — that there was a deficiency in the measurement — although plaintiff swears most positively that he was not aware of the deficiency.
His testimony is not impeached.
Defendant further urges that, by merely looking at the building and lot, it must have been evident, particularly to an architect, that it did not contain as many feet as in the deed.
In view of his testimony, it would be difficult, because he is an architect, to hold that he had knowledge of a fact, although he says he had not, and none of the circumstances awakens the suspicion that he must have known it.
The terms and conditions of the sale had been agreed upon. There was some delay afterward. The bank inquired as to the cause of this delay, and it all came to an end by vendees selecting the notary of the bank to pass the deed which was passed.
Defendant’s contention is that the physical appearance of the property must have informed the purchasers that no property at the corner in question would be sold, except such as was covered by the building.
There is no question but that all parties are bound by the fact that the property was situated as just mentioned, but, when we consider the matter a step further, it occurs to us that defendant was as much bound by physical appearance as plaintiffs.
If he did not discover from physical appearance that his property did not measure the number of feet mentioned in the deed, he cannot successfully urge that plaintiffs, passing on the street, should have noticed that the property did not contain the number of feet claimed.
The question is suggested, “What would be the result if a vendor were to sell a lot one hundred feet front, when intending to sell a lot thirty fee't front?”
The answer is easy enough. It would be manifest that the vendor was scarcely able to own property, and, on the other hand, that the purchaser was in utmost bad faith.
There is nothing of the sort here at all.
This building was a four-story building-part of a row of buildings — and the difference in measurement is not by any means as apparent as in the cited case.
Defendant’s author collected taxes thereon many years. We infer that the property was insured, and a handsome rental collected, yet it was never found that there was error in the frontage. The defendant and his authors not having found the difference in frontage, by reference to the tax receipt, he is scarcely in a position to successfully hold that plaintiff should have found out the difference from the tax receipt which was *167 handed over by defendant to plaintiff at the time of the sale.
As to the error stoutly invoked, viz., the deficiency of measurement, it generally results from error. All that a vendor would have to do to escape from a demand to annul the sale, or for diminution of the price, would be to invoke his own error.
The purchaser testified that he bought the property corner of Perdido and Carondelet, measuring 31 feet front by the depth before mentioned; that he received a copy of defendant’s deed prior to the sale, showing that measurement. This is not denied.
The law attaches importance to measurement. It has controlling effect unless it falls within some of the exceptions. Here it does not fall within some of the exceptions, such as that it was a sale per aversionem; nor does it appear that an error in description was committed, for which both parties can be held liable.
If the purchasers had bought the property corner of Perdido and Carondelet without reference to measurement, for the price mentioned, it would be different; but they bought the corner lot, measuring so many feet. We cannot read the measurement out of the deed, because a particular property was sold. To illustrate: Even as to movable property, if a purchaser buys a particular hogshead of sugar, or a barrel of molasses, he cannot claim for deficiency in weight, if they be full; but if he buys a hogshead of sugar containing 1,000 pounds of sugar, or a barrel of molasses containing so many gallons of molasses, he can require the measure.
Por reasons still more evident, if the purchaser of a particular tract buys the tract without reference to measurement, he cannot exact for deficiency; but, if he buys a tract or a lot of-ground containing so many feet, his vendor is bound for the deficiency.
It follows from the foregoing that we have not found our way to hold that defendant’s offer some time after the sale to return the price released him from his liability as a vendor.
This is a hard case. We have meditated over its issue only to return to the same conclusion.
With the light before us, presented by able and learned counsel with marked ability, we cannot find that the one-sided error could be of any avail in this transaction.
It is therefore ordered, adjudged, and decreed that the judgment appealed from is annulled, avoided, and reversed.
It is further ordered that plaintiffs recover judgment of the defendant in proportion to the difference in measurement between number of feet and inches the lot actually measures and that stated in the deed — that is, that the purchase price be, and the same is hereby, reduced by deducting the amount of $5,320.18 from it (the purchase price) — and that defendant pay costs in both courts.
The law and' the evidence being in favor of defendant, Stauffer, and against the Canal Bank, his warrantor, it is further ordered, adjudged, and decreed that defendant, Stauffer, recover judgment of the warrantor, the Canal Bank, in the same proportion — that is, by reducing the purchase price in the deed in which he became the owner in the sum of $5,320.18 (that is, that defendant have and recover the same judgment over and against the Canal Bank, called in warranty, as that rendered against defendant) — and that the Canal Bank pay the costs of both courts.
PR OVO STY, J„ concurs in the decree.